1  NICOLA T. HANNA
   United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
   Chief, General Civil Section
5  JENNIFER R. JACOBS (Cal Bar No. 157609)
   Assistant United States Attorney
6       Federal Building, Suite 7516
        300 North Los Angeles Street
7       Los Angeles, California 90012
        Telephone: (213) 894-6167
8       Facsimile: (213) 894-7819
        E-mail: Jennifer.jacobs3@usdoj.gov
9
   Attorneys for Defendant
10 Federal Bureau of Prisons

11                  UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                         WESTERN DIVISION

14

15

16 MARK MIGDAL,                    CASE NO. CV 19-214-R

17          Plaintiff,             DEFENDANT FEDERAL BUREAU OF
                                   PRISONS' NOTICE OF MOTION AND
18 v.                              MOTION TO DISMISS PLAINTIFF'S
                                   COMPLAINT
19 FEDERAL BUREAU OF PRISONS,
                                   [Proposed Order filed concurrently
20          Defendant.             herewith]

21                                 Hearing Date:  July 1, 2019
                                   Hearing Time:  10:00 a.m.
22                                 Place:         Roybal Federal Building
                                                  and U.S. Courthouse,
23                                                Courtroom 880

24
                                   Honorable Manuel L. Real
25                                 United States District Judge

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ......................................................... iii

PLAINTIFF'S COMPLAINT ................................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.    LEGAL STANDARDS ................................................................................................ 2

    A.    Rule 12(b)(1) Standard .................................................................................... 2

    B.    Rule 12(b)(6) Standard .................................................................................... 3

III.    STATEMENT OF FACTS ......................................................................................... 4

    A.    Migdal's Medical Condition ........................................................................... 4

    B.    RFRA Facts ........................................................................................................ 5

IV.    PLAINTIFF'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED ................................................................................................................ 6

    A.    This Court lacks jurisdiction to provide Migdal relief on his Eighth Amendment claim because he lacks Article III standing. ........................... 6

        1.    The Complaint lacks factual allegations showing that Migdal will suffer an actual, immediate injury. ............................................ 7

        2.    Migdal has not alleged facts connecting his alleged threatened harm to the BOP's housing designation at Lompoc. .................... 8

        3.    The Complaint lacks factual allegations plausibly showing that an order requiring the BOP to house Migdal at a RRC will redress the alleged *speculative* deficient medical services at Lompoc. ......................................................................................... 9

    B.    Plaintiff's Eighth Amendment claim should be dismissed because he is not entitled to his requested relief. ........................................................... 9

        1.    Injunctive relief ..................................................................................... 9

        2.    This Court lacks jurisdiction to review the BOP's designation of Plaintiff's place of imprisonment. ............................................ 10

    C.    Plaintiff has failed to allege a violation of the Eighth Amendment based on his speculation that the BOP *might* deny medical care in the future. .................................................................................................................. 11

V.    PLAINTIFF'S RFRA CLAIM SHOULD BE DISMISSED.................................12

    A.    This Court lacks jurisdiction to review the BOP's housing
        designation...................................................................................................12

    B.    The Complaint lacks factual allegations that plausibly state a claim
        that Migdal's incarceration at Lompoc violates RFRA. .............................15

VI.    CONCLUSION...............................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases** **Page(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................... 3, 17

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................... 3

*Carnell v. Grimm,*
74 F.3d 977 (9th Cir. 1996) ........................................... 11

*Carrico v. City & County of San Francisco,*
656 F.3d 1002 (2011) ..................................................... 7

*Cent. Delta Water Agency v. United States,*
306 F.3d 938 (9th Cir. 2002) ......................................... 7

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ..................................................... 15

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ....................................................... 6

*Dorsey v. United States,*
567 U.S. 260 (2012) ..................................................... 13

*Estelle v. Gamble,*
429 U.S. 97 (1976) ....................................................... 11

*FW/PBS, Inc. v. Dallas,*
493 U.S. 215 (1990) ....................................................... 7

*Graham v. Connor,*
490 U.S. 386 (1989) ..................................................... 11

*Holt v. Hobbs,*
135 S.Ct. 853 (2015) ..................................................... 15

*Ingraham v. Wright,*
430 U.S. 651 (1977) ..................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of America,*
511 U.S. 375 (1994) ....................................................... 2

*Krottner v. Starbucks Corp.,*
628 F.3d 1139 ............................................................... 7

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir.2001) ......................................... 11

*Lockhart v. United States,*
546 U.S. (2005) ........................................................... 14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ....................................................... 6

iii

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ..................................................... 16

*Reeb v. Thomas*,
   636 F.3d 1224 (9th Cir. 2011) ..................................................... 14

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ....................................................... 2

*San Jose Christian Coll. v. City of Morgan Hill*,
   360 F.3d 1024 (9th Cir. 2004) ..................................................... 16

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036, 1039 n. (9th Cir. 2003) ......................................... 2

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ....................................................... 15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................ 7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ......................................................... 3

*Tapia v. United States*,
   564 U.S. 319, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) ............... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................... 3

*United States v. Ceballos*,
   671 F.3d 852 (9th Cir. 2011) ....................................................... 15

*United States v. Ritchie*,
   342 F.3d 903–908 (9th Cir. 2003) ................................................. 3

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ..................................................................... 7

*Wakefield v. Thompson*,
   177 F.3d 1160 (9th Cir. 1999) ..................................................... 11

*Walker v. Beard*,
   789 F.3d 1125 (9th Cir. 2015) ..................................................... 15

*Warsoldier v. Woodford*,
   418 F.3d 989 (9th Cir. 2005) ....................................................... 15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..................................................................... 7

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ....................................................... 2

*Wittman v. Personhuballah*,
   136 S.Ct. 1732 (2016) ................................................................... 7

**Federal Statutes**

1 U.S.C. § 109 ....................................................................................... 13

18 U.S.C. § 3621(b) ........................................................................... *passim*

18 U.S.C. § 3582(a) ............................................................................... 14

18 U.S.C. § 3626(a) ................................................................................. 9

18 U.S.C. § 3621(b) .............................................................................. 12

18 U.S.C. § 3625 ................................................................................... 14

18 U.S.C.A. § 3621 ................................................................................. 1

42 U.S.C. § 2000bb ................................................................................. 1

42 U.S.C. § 2000bb-1 ............................................................................ 12

42 U.S.C. § 2000bb-3(b) ....................................................................... 12

42 U.S.C. § 2000cc ................................................................................ 15

**Other**

Article III, § 2 of the U.S. Constitution ................................................ 6

v

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>
## <u>PLAINTIFF'S COMPLAINT</u>

PLEASE TAKE NOTICE that, on July 1, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 880 of the Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, CA 90012, before the Honorable Manuel L. Real, Defendant Federal Bureau of Prisons will move this Court for an order dismissing Plaintiff's Complaint in its entirety with prejudice. Defendant brings this motion pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds this Court lacks subject matter jurisdiction and the Complaint fails to state a claim upon which relief can be granted against the Federal Bureau of Prisons.

This Motion is made upon this Notice, the attached Memorandum of Points and Authorities, all documents incorporated by reference in or submitted in support of the Complaint, all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

Dated: April 29, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


/s/
JENNIFER R. JACOBS
Assistant United States Attorney

Attorneys for Defendant
Federal Bureau of Prisons

vi

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On January 10, 2019, shortly before he surrendered to serve an 18-month term of imprisonment, Plaintiff Mark Migdal ("Migdal") filed a complaint for an injunction directing the Bureau of Prisons ("BOP") to provide timely and adequate medical care and to designate his place of imprisonment at a halfway house in San Francisco. (Compl. [Dkt. #1], ¶¶ 1, 6, 36-37.)

In his Complaint, Migdal alleges he suffers from serious medical conditions for which he anticipates the BOP will not provide adequate or timely medical treatment in violation of the Eighth Amendment.  (Compl., ¶¶ 9-20, 32-33.)  Migdal further alleges that the BOP's assignment of him to a federal prison camp in Lompoc, California, rather than a halfway house in San Francisco, violates his rights under the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb, <u>et seq.</u> ("RFRA").  Specifically, Migdal alleges his Jewish faith obligates him to take care of his minor child while his wife recovers from an anticipated surgical procedure, and that he cannot fulfill this obligation at his current housing assignment, but he could do so if assigned to a halfway house in San Francisco.  (Compl., ¶¶ 21-30.)

Based on these allegations, Migdal previously filed a motion for a preliminary injunction to transfer to a Residential Re-Entry Center, <u>see</u> Dkt. # 19, that was opposed by the BOP, <u>see</u> Dkt. # 24, and denied by this Court on April 22, 2019.  <u>See</u> Dkt. # 28.

Now, Migdal's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6).  First, the Court lacks subject matter jurisdiction over Plaintiff's claims against the BOP because he lacked standing at the time he filed suit.  As Migdal alleges, he instituted this action "before surrendering for service of his sentence at the federal prison in Lompoc, California."  (Compl., ¶ 6.)  In addition, Plaintiff has not alleged sufficient facts to demonstrate he is threatened with imminent, concrete and particularized harm.  This court also lacks standing to review the BOP's designation of Plaintiff's place of imprisonment pursuant to 18 U.S.C.A. § 3621.  Thus,

this Court should dismiss the Complaint for lack of jurisdiction.

The Complaint should also be dismissed because it lacks sufficient factual allegations, as opposed to labels and conclusions, to support claims for violation of the Eighth Amendment and RFRA. Thus, this Court should dismiss the Complaint pursuant to FRCP 12(b)(6) on this additional basis.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). "It is presumed that a cause lies outside of this limited jurisdiction …, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted).

A challenge to subject matter jurisdiction is properly decided under FRCP 12(b)(1) and may be asserted as either a facial or a factual challenge. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. "[The court] also need not presume the truthfulness of the plaintiff['s] allegations." White, 227 F.3d at 1242. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004).

**B.     Rule 12(b)(6) Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  Rather, the allegations of the complaint "must be enough to raise a right to relief above the speculative level." Id.  To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

Furthermore, courts are not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 907–908 (9th Cir. 2003); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling

on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

## III.   STATEMENT OF FACTS

On April 30, 2018, judgment was entered against Migdal in <u>United States v. Migdal</u>, No. 3:16-cr-00411-VC (N.D. Cal.) and he was sentenced to 18 months imprisonment and ordered to pay fines and restitution totaling $1,460,515.02 based on his ability to pay and to surrender at a facility designated by the BOP.  (See Dkt. #19 [Pl.'s Mot. for Prelim. Inj.], p. 2, lns. 3-8; and Dkt. #24-1, pp. 10, 15-16 [J. in a Criminal Case].)

The BOP designated the federal prison camp in Lompoc, California ("Lompoc") as Migdal's place of imprisonment pursuant to 18 U.S.C. § 3621(b).  (Compl., ¶ 2.) Migdal was ordered to surrender for service of his term of imprisonment on January 10, 2019 by 2:00 p.m.  (Id.)  Before surrendering for service of his sentence at Lompoc, Migdal filed the instant lawsuit.  (Id. at ¶ 6.)  Indeed, Migdal alleges he had to file the Complaint before he surrendered in order to avoid the requirement that he exhaust his administrative remedies.  (Id.)

### A.   <u>Migdal's Medical Condition</u>

Migdal claims to suffer from various chronic medical conditions.  These conditions include significant coronary artery disease for which his physician has recommended coronary angiography and possible stent placement on an expedited basis. (Id. at ¶¶ 10-11.)  Migdal also has "severe degenerative disc disease" and lumbar radiculitis.  (Id. at ¶ 12.)  While he alleges he recently underwent evaluation to determine if he is a candidate for spinal surgery, but he does not allege whether surgery was actually recommended.  (Id.)  Migdal further alleges that he had both of his knees replaced in late 2018, and that his orthopedist has recommended that he continue to undergo various physical therapy modalities; however, Migdal does not allege when this recommendation was made or the frequency or length of time for which the physical therapy was recommended.  (Id. at ¶ 13.)  Migdal has also been "recently" diagnosed as

having bilateral torn rotator cuffs, and that he is a candidate for arthroscopic surgery for his left shoulder.  (Id. at ¶ 14.)  Migdal has various other medical conditions, including a large hiatal hernia, sleep apnea, carpal tunnel and chronic nasal congestion.  (Id. at ¶ 15.)

Migdal acknowledges that the BOP provides medical care to inmates.  (Id. at ¶ 16.)  Some of the medical care the BOP provides, including some of the care Migdal alleges he needs, must be approved by the Utilization Review Committee at Lompoc.  (Id. at ¶¶ 16-17.)  Migdal alleges there is a possibility care will not be approved, but the review process can be as quick as a few weeks.  (Id. at ¶ 16.)  While the BOP does not provide elective care when inmates have less than 12 months to serve, Migdal acknowledges that even with good time credit he will be incarcerated for 15 months.  (Id. at ¶ 18.)  Nevertheless, Migdal thinks it is unlikely the BOP will treat his rotator cuff, spinal problems or hiatal hernia during his incarceration.  (Id.)  Migdal also thinks he will not receive physical therapy for his knees because Lompoc does not have a physical therapy "department."  While he thinks specialized physical therapy may be available in the community, he is concerned the BOP might not approve him for it or that it will take weeks to get the approval.  (Id. at ¶ 20.)

Migdal also thinks it is unlikely the BOP will continue Migdal on all of his pre-incarceration prescription medications because the BOP's formulary does not include all drugs, and because the BOP is "known" to discontinue pain medications because of a belief that prisoners are faking pain.  (Id. at ¶ 19.)

**B.    RFRA Facts**

Migdal is married and has an eleven year old daughter.  (Id. at ¶ 22.)  Migdal's wife was diagnosed with cancer in 2016, and her physician recently recommended that she undergo a hysterectomy as a preventative measure.  (Id. at ¶ 23.)   Migdal alleges that he and his wife are the only persons who can take care of his daughter. Consequently, during Migdal's incarceration, he alleges that there is no one to take care of his daughter while his wife undergoes the hysterectomy.  (Id. at ¶¶ 24-25.)

Migdal's religion is Judaism.  (Id. at ¶ 21.)  He believes his religion obligates him

to take care of his wife and child in sickness and health.  (Id. at ¶ 26.)  His incarceration keeps him from honoring this obligation.  (Id.)  However, he thinks he could fulfill his familial obligations if he were housed at a Residential Re-entry Center ("RRC") in San Francisco, which is near where his wife and child live, because his understanding is that inmates at an RRC are allowed to leave the facility during the day for work and to take care of family obligations.  (Id. at ¶¶ 26, 28.)

## IV.   PLAINTIFF'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED

Plaintiff's claim based on speculation that the BOP might violate his Eighth Amendment right to be free from deliberate indifference to his serious medical needs should be dismissed for three reasons.  First, Plaintiff lacks Article III standing because he has failed to allege facts plausibly showing that he faces a credible threat of real and immediate actual injury at Lompoc.  Second, this Court lacks jurisdiction to review the BOP's housing designation.  Third, the Complaint lacks factual allegations that state a plausible Eighth Amendment violation.

### A.   This Court lacks jurisdiction to provide Migdal relief on his Eighth Amendment claim because he lacks Article III standing.

Migdal seeks an order directing the BOP to provide "timely" and "adequate" medical care for his the medical needs.  (Id. at ¶ 36.)  Migdal's claim should be dismissed in its entirety because this Court lacks jurisdiction to grant relief, as Migdal lacks Article III standing due to the absence of an injury-in-fact that is "fairly traceable" to the BOP's challenged conduct.

Under Article III, § 2 of the U.S. Constitution, federal courts can only hear live "cases" or "controversies."  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (citation and internal quotes omitted).  The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Lujan v.

1   Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The party invoking federal

2   jurisdiction must establish each element with the manner and degree of evidence

3   required at the particular stage of the litigation.  Id. at 561; see also Spokeo, Inc. v.

4   Robins, 136 S. Ct. 1540, 1547.  A party cannot litigate in federal court if it lacks

5   standing.  Valley Forge Christian College v. Americans United for Separation of Church

6   & State, Inc., 454 U.S. 464, 475-476 (1982); see also Wittman v. Personhuballah, 136

7   S.Ct. 1732, 1736-1737 (2016).

8        Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . .

9   allege facts demonstrating" each element.  Spokeo, supra, 136 S. Ct. at 1547, citing

10  Warth v. Seldin, 422 U.S. 490, 518 (1975); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231

11  (1990) (as the party invoking jurisdiction, the plaintiff bears the burden of establishing

12  these elements).  Standing cannot be established by conclusory allegations.  Carrico v.

13  City & County of San Francisco, 656 F.3d 1002, 1006-1007 (2011) (holding that

14  plaintiff's conclusory allegation that defendant's action "impact[ed] their operations as

15  landlords" failed to establish standing).

16               1.    The Complaint lacks factual allegations showing that Migdal will

17                     suffer an actual, immediate injury.

18       In order to establish Article III standing, a plaintiff must show that he has suffered

19  the invasion of a legally protected interest that is "concrete and particularized" and

20  "actual or imminent," "not conjectural or hypothetical."  Spokeo, Inc., supra, 136 S. Ct.

21  at 1548.  A threatened injury satisfies the injury-in-fact element of Article III standing

22  only where the plaintiff is in immediate danger of sustaining a direct injury as a result of

23  the challenged conduct.  Cent. Delta Water Agency v. United States, 306 F.3d 938, 947

24  (9th Cir. 2002).  The threat of harm must be credible, real and immediate, not conjectural

25  or hypothetical.  Krottner v. Starbucks Corp., 628 F.3d 1139, 1143.

26       Here, the Complaint lacks factual allegations—as opposed to conclusions and

27  speculation—plausibly showing that Migdal faces a credible threat of real and immediate

28  actual injury as the result of the BOP's housing designation at Lompoc.  Clearly, Migdal

had not suffered any actual injury at the time he filed the Complaint because he had not yet surrendered to the BOP at the time the Complaint was filed.  (Compl., ¶ 6.)  Further, the Complaint is devoid of facts—as opposed to speculation and conjecture—plausibly showing the BOP will intentionally or recklessly deny medical care for any of Migdal's serious medical conditions in the immediate future.

To the contrary, Migdal acknowledges that the BOP provides medical care to inmates.  (Id. at ¶ 16.)  He even acknowledges that the BOP provides *elective* care for inmates, such as himself, who have more than 12 months to serve (Id. at ¶ 18.), and that the specialized physical therapy he needs for his knees may be available in the community of Lompoc and that the BOP could approve him to receive it (Id. at ¶ 20). Migdal's speculation that the BOP is unlikely to treat some of his medical conditions because of the time it will take for evaluation and approval by the Utilization Review Committee is undercut by his admission that the review process oftentimes takes only "weeks."  (Id. at ¶ 16)

Further, the fact that some of Migdal's medications may be switched to a medication on the BOP's formulary once he is incarcerated is only a hypothetical injury that fails to establish standing.  Migdal has failed to identify even one medication that he was taking at the time he filed his Complaint that the BOP does not have on its formulary.  He could easily have done so given the fact the BOP's formulary is publicly available.[1]  Even if Migdal was taking non-BOP-formulary prescription medication prior to his incarceration, to the extent BOP lacks an adequate substitute the BOP has a process for the prescription of non-formulary medications.[2]

> ### 2.    Migdal has not alleged facts connecting his alleged threatened harm to the BOP's housing designation at Lompoc.

Migdal lacks Article III standing because the Complaint lacks factual allegations

---

[1] The BOP's formulary is available at: https://www.bop.gov/resources/pdfs/formulary.pdf (last visited April 26, 2019).

[2] Id. at 6-7.

credibly showing that his threatened injuries are "fairly traceable" to the BOP's housing designation.  For the reasons already discussed, Migdal has not alleged facts—as opposed to conclusions—plausibly showing that the BOP's decision to house him at the federal prison camp at Lompoc will result in deliberate indifference to any of his serious medical needs.  Migdal alleges that inmates confined at an RRC receive treatment in the community and no approval from a Utilization Review Committee is required.  (Compl., ¶ 16, n. 2.)  Even if true—and even if the medical care available in the community were better than what is available at Lompoc—this allegation does not plausibly establish that Migdal's Eighth Amendment right to be free from deliberate indifference to his serious medical needs will be violated at Lompoc.

> 3.  <u>The Complaint lacks factual allegations plausibly showing that an order requiring the BOP to house Migdal at a RRC will redress the alleged *speculative* deficient medical services at Lompoc.</u>

As set forth above, because Migdal has alleged only a speculative threat of injury, he has not alleged harm that is likely to be redressed by a favorable judicial decision.

Accordingly, this Court should dismiss Migdal's Eighth Amendment claim.

**B.  Plaintiff's Eighth Amendment claim should be dismissed because he is not entitled to his requested relief.**

Plaintiff seeks an injunction directing the BOP to provide "timely, adequate medical care" and to "designate the RRC in San Francisco, California as [his] place of imprisonment."  (Compl., ¶¶ 36-37.)  Because neither form of relief is available to Plaintiff, and because this is the only relief requested in the Complaint, his Eighth Amendment claim should be dismissed.

> 1.  <u>Injunctive relief</u>

Plaintiff's request for an injunction directing the BOP to provide him with "timely" and "adequate" medical care violates the statutory limitations on injunctive relief to address prison conditions set forth in 18 U.S.C. § 3626(a).  This section provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)

Even if this Court determines Plaintiff has adequately alleged a violation of a federal right, Plaintiff is not entitled to an injunction directing the BOP to provide "timely" and "adequate" care because such relief is not narrowly drawn and in conformance with section 3626(a).

    2.    <u>This Court lacks jurisdiction to review the BOP's designation of Plaintiff's place of imprisonment</u>.

Plaintiff seeks an injunction directing the BOP to house him at the RRC in San Francisco based on his belief that inmates housed at such location receive medical treatment in the community and do not require approval from a utilization review committee to receive treatment. (Compl., ¶ 16, n. 2.) Regardless of the accuracy of Plaintiff's beliefs, this Court lacks jurisdiction to hear Plaintiff's claim because recent legislation has stripped courts of jurisdiction to review the BOP's housing designations.

On December 21, 2018, the President signed the First Step Act into law. The First Step Act amended 18 U.S.C. § 3621(b), which governs the BOP's designation of the place of an inmate's imprisonment, to state: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." Consequently, to the extent Plaintiff's Eighth Amendment claim seeks relief in the form of an order designating the RRF in San Francisco as Migdal's place of

1    imprisonment, this Court lacks jurisdiction over the claim.

2    **C.   Plaintiff has failed to allege a violation of the Eighth Amendment based**

3    **on his speculation that the BOP *might* deny medical care in the future.**

4    As explained above, Migdal instituted this action before surrendering for service

5    of his sentence at the federal prison in Lompoc, California.  (Compl., ¶ 6.)  Thus, at the

6    time he filed this action, he was not yet in the custody of the BOP and had not yet begun

7    serving his term of imprisonment.  As a result, at the time the Complaint was filed the

8    BOP's obligations toward Migdal under the Eighth Amendment had not yet arisen

9    because he was not yet "in custody."  The Eighth Amendment's prohibition of "cruel and

10   unusual punishments" applies only "after conviction and sentence." Graham v. Connor,

11   490 U.S. 386, 393 & n. 6 (1989), citing Ingraham v. Wright, 430 U.S. 651, 671 n. 40

12   (1977).   Pretrial detainees "are not convicted prisoners." Carnell v. Grimm, 74 F.3d 977,

13   979 (9th Cir. 1996). Therefore, pretrial detainees are accorded no rights under the Eighth

14   Amendment.  See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).

15   Furthermore, the government has an "obligation to provide medical care for those

16   whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976).  As

17   a result, "deliberate indifference to serious medical needs of prisoners constitutes the

18   'unnecessary and wanton infliction of pain,' [citation] proscribed by the Eighth

19   Amendment." Id. (citation omitted).  Plaintiff has alleged nothing more than speculation

20   and conjecture that the BOP will not abide by its Constitutional obligations.

21   No court has held that the government has any obligation under the Eighth

22   Amendment toward an individual who is not yet in custody.  This, of course, makes

23   eminent sense as an individual who has not yet in custody to begin service of his

24   sentence has no restrictions on "his ability to secure medical care 'on his own behalf.'"

25   Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999) (holding, however, that

26   the government does have a duty to provide an inmate being released from custody with

27   a supply of medication sufficient to cover a reasonable amount of time after the date of

28   release to permit him to consult a doctor and obtain a new supply).

As Migdal was not in custody at the time he filed the complaint, the BOP had no obligations to him under the Eighth Amendment and this claim must be dismissed.

Accordingly, Migdal's claim based on a violation of the Eighth Amendment should be dismissed because he lacks Article III standing, the First Step Act states courts have no standing to review the BOP's housing designations and the Complaint lacks factual allegations plausibly stating an Eighth Amendment violation.

## V.    PLAINTIFF'S RFRA CLAIM SHOULD BE DISMISSED

Plaintiff's RFFA claim should be dismissed because this Court lacks jurisdiction to review the BOP's housing determinations pursuant to the First Step Act.  Plaintiff's RFRA claim should also be dismissed on the independent grounds that the Complaint lacks factual allegations that plausibly state a claim.

### A.    This Court lacks jurisdiction to review the BOP's housing designation.

Plaintiff alleges that his housing designation in Lompoc violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1 et. seq.  The applicable section of RFRA states:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except … [if it] is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

Moreover, 42 U.S.C. § 2000bb-3(b) states: "Federal statutory law adopted after November 16, 1993, is subject to this chapter unless such law explicitly excludes such application by reference to this chapter."

As set forth in Section IV.B above, the First Step Act was amended on December 21, 2018.  Among its many changes, Section 601 of the Act amended 18 USC § 3621(b). Two parts of the amended statute are relevant here.  First, the first sentence of the statute previously read: "(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment."  The First Step Act replaced this sentence with:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, *any request made by the prisoner related to faith-based needs*, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence.

Second, the following sentence was added to the end of this paragraph: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."

In <u>Dorsey v. United States</u>, 567 U.S. 260, 273–74 (2012), the Court examined a statute containing a requirement for an express exemption in a later enacted statute, specifically, whether more lenient penalties for crack cocaine convictions in the 2010 Fair Sentencing Act applied to pre-Act offenders sentenced after the Act took effect. <u>Id.</u> 264. This was an issue because a previously-enacted statute provided that a new criminal statute that repeals an older criminal statute shall not change the penalties under the older statute "unless the repealing Act shall so expressly provide." <u>Id.</u> at 272, quoting 1 U.S.C. § 109. This was seemingly at odds with the Fair Sentencing Act, which provided that the governing sentencing guidelines are the ones "in effect on the date the defendant is sentenced." <u>Id.</u> In analyzing the conflict, the Court held an express reference requirement creates "a less demanding interpretive requirement." The Court reasoned that this is because:

[S]tatutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute

but as modified.  [Citations omitted.]  And Congress remains free to express any such intention either expressly or by implication as it chooses. Id. at 273-4.

There are a number of reasons why the express reference language in RFRA should be viewed in the same way, i.e., simply as important background for interpreting later enacted statutes.  See, Dorsey v. United States, 567 U.S. at 274; Lockhart v. United States, 546 U.S. at 142, 148 (2005) (SCALIA, J., concurring) ("To be sure, legislative express-reference or express-statement requirements may function as background canons of interpretation of which Congress is presumptively aware.")  An express reference provision cannot, however, bind a subsequent Congress as to how it makes its will known.  Accordingly, RFRA's express reference language does not apply to designation determinations made by the BOP under 18 U.S.C. § 3621(b).[3]

This conclusion is supported by the fact the First Step Act now requires the BOP to consider "any request made by the prisoner related to faith-based needs" when deciding where to designate an inmate.  This is consistent with the First Step Act's emphasis on allowing the BOP to implement faith-based inmate programing.  See, e.g., Pub.L. 115-391, Title I, §§ 102(a) and 106(a), Dec. 21, 2018, 132 Stat. 5208, 5214.

Further, when Congress passed the First Step Act, it was legislating with the presumed awareness that BOP designation determinations are generally immune from later judicial review.  See, e.g., Tapia v. United States, 564 U.S. 319, 331 (2011) ("the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment' . . . A sentencing court can recommend that the BOP place an offender in a particular facility or program. See § 3582(a). But decision making authority rests with the BOP."); Reeb v. Thomas, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (reviewing BOP's individualized placement decisions would be contrary to the "plain language" of § 3625 exempting such placement decisions from judicial review); cf United States v. Ceballos,

_____

[3] RFRA clearly applies to all other conditions of confinement.

14

671 F.3d 852, 855 (9th Cir. 2011) (Sentencing court lacks jurisdiction to select the place where the sentence will be served.).

Given this background, as well as the reasoning in <u>Dorsey</u>, it is reasonable to conclude that the express reference provision in RFRA does not negate the provision in the recently-enacted First Step Act, which exempts BOP designation decisions from judicial review under RFRA while simultaneously requiring the BOP to take an inmate's expressed "faith based needs" into account.

## B. The Complaint lacks factual allegations that plausibly state a claim that Migdal's incarceration at Lompoc violates RFRA.

To state a claim under RFRA, a prisoner is required to show that: (1) he takes part in a "religious exercise," and (2) the State's actions have substantially burdened that exercise. <u>Walker v. Beard</u>, 789 F.3d 1125, 1134 (9th Cir. 2015), citing <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 995 (9th Cir. 2005).[4]  Under RFRA, the initial burden falls on the challenging party to prove that his religious exercise is grounded in a sincerely held religious belief and that the government's action substantially burdens his religious exercise. <u>Holt v. Hobbs</u>, 135 S.Ct. 853, 857 (2015).  If the challenging party satisfies this burden, the burden shifts to the government to show that substantially burdening the religious exercise of the "particular claimant" is "the least restrictive means of furthering [a] compelling governmental interest." <u>Id.</u>

Even assuming, <u>arguendo</u>, that taking care of an ill spouse falls within the scope of Plaintiff's Jewish faith, Migdal's Complaint lacks factual allegations that plausibly show

---

[4] <u>Walker</u> involves a state prisoner making a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc <u>et seq</u>.  The RLUIPA was enacted after the Supreme Court held that the RFRA was unconstitutional as applied to the states in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997).  As the Ninth Circuit noted in <u>Walker</u>, RLUIPA and RFRA contain the same standard of review for intrusions on religious liberty in the limited contexts of prisoners and federal land.  <u>Walker</u>, <u>supra</u>, 789 F.3d at 1134, citing <u>Shakur v. Schriro</u>, 514 F.3d 878, 888 (9th Cir. 2008).

the BOP's actions have substantially burdened that exercise. "To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" Walker, supra, 789 F.3d at 1135, quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004). The government imposes a substantial burden "only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1070 (9th Cir. 2008) (internal citations omitted).

The allegations of the Complaint do not plausibly demonstrate that Plaintiff's incarceration at Lompoc imposes a substantial burden on Plaintiff's exercise of religion. First, the allegations regarding his wife's need for medical treatment are conclusory. The only medical treatment Plaintiff alleges she needs is a "hysterectomy" as a "preventative measure." (Compl., ¶ 23.) There are no allegations regarding when she requires this procedure, whether the procedure will be performed as an in-patient versus out-patient, or the amount of her recovery time.

Second, the allegations that Plaintiff's wife cannot undergo a medical procedure unless Plaintiff is available to take care of their eleven year old daughter are likewise conclusory. Plaintiff alleges only that neither he nor his wife "have anyone" to take care of his daughter. (Compl., ¶ 24.) The Complaint lacks any factual allegations plausibly showing that Plaintiff's personal presence is the only available option of caring for his daughter if his wife elects to undergo a hysterectomy (there are clearly other options, such as hiring a caregiver). Of note, Plaintiff's daughter is eleven and is presumably in school during the day. Even if Plaintiff is correct in his understanding that inmates at a RRC are allowed to leave during the day to take care of family obligations (Compl., ¶ 28), he would still be incarcerated at night.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 675. While courts have not

developed a mechanical analysis to distinguish between well-pleaded factual allegations and "mere conclusory statements," a court should note the extent a complaint relies on legal labels instead of subsidiary facts.  After identifying factual allegations that are entitled to the assumption of truth, a court must them determine if they "nudge[] [the] claims . . . across the line from conceivable to plausible." Id.  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and *common sense*." Id. at 679 (emphasis added).

Application of the correct legal standard to Plaintiff's RFRA claim compels the conclusion that its vague, conclusory and unsubstantial assertions are insufficient to state a plausible claim based on alleged substantial interference with the exercise of his religion due to his incarceration at Lompoc.

## VI.   CONCLUSION

Based on the foregoing, Defendant Federal Bureau of Prisons respectfully requests the Court to dismiss Plaintiff's Complaint.

Dated: April 29, 2019                    Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


                                         /s/
                                     JENNIFER R. JACOBS
                                     Assistant United States Attorney

                                     Attorneys for Defendant
                                     Federal Bureau of Prisons